IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| DAVID THOMAS DAWSON, | ) | CV-89-246-BLG-RWA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| MICHAEL MAHONEY, Warden, | ) | |
| Montana State Prison, | ) | |
| | ) | |
| Respondent. | ) | |

This matter comes before the Court upon the Findings and Recommendations of Magistrate Judge Richard Anderson. Presently before the Court is the Petitioner's *Pro Se* Motions to (1) withdraw his federal habeas petition and (2) dismiss his court appointed attorneys. Upon consideration, Magistrate Anderson concluded that Petitioner does not suffer from any mental disease or defect and that his decision to forgo habeas review and to dismiss habeas counsel is made knowingly, intelligently, and voluntarily. After having reviewed the record and considering Magistrate Anderson's Findings and Recommendations and for the foregoing reasons, this Court finds that there is good cause appearing to GRANT the Petitioner's *pro se* motions.

1

BACKGROUND

Petitioner is a Montana prisoner and has been sentenced to death. After exhausting his claims in state court in September 200, he filed a second amended petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 27, 2004 and in light of the Supreme Court's ruling in light of Schriro v. Summerlin, 124 S.Ct. 2519, 2526 (2004), Petitioner filed a *pro se* request with this Court asking to cease all his appeals. Magistrate Anderson directed Petitioner's counsel to discuss this request with him and report back. In their report of August 30, 2004, habeas counsel stated that they believed Petitioner's "decision to end his life is the product of his conditions of confinement combined with the suicides of two close companions of Mr. Dawson since July, 2003." Further, habeas counsel's report requested an evidentiary hearing. On September 8, 2004 Petitioner, proceeding *Pro Se,* moved to dismiss his habeas counsel.

As a consequence of these events, Magistrate Anderson appointed independent experts, Dr. Sally C. Johnson, M.D. and Dr. James Hilkey, to evaluate Petitioner and the conditions of his confinement. Dr. Johnson was the former Associated Warden Medical and Chief Psychiatrist of the Health Services Division of the Federal Correctional Complex at Butner, North Carolina. Dr. Johnson's responsibility was to interview all relevant parties and review the facilities at the Montana State Prison. Dr. Hilkey's responsibility was to administer a full battery of psychological test on the Petitioner.

In the course of her evaluation of the Petitioner, Dr. Johnson visited the Montana State Prison and reviewed its facilities. She also interviewed the Petitioner, Petitioner's habeas counsel, Petitioner's special counsel, Petitioner's mother, and Ann Sheridan, Petitioner's long

time friend.  On May 16, 2005, the Court received a 40-page report (Report") from Drs. Johnson and Hilkey.  Their combined conclusion was that Petitioner did not suffer from any mental disease, disorder, or defect which would affect his capacity to appreciate his position and to make rational decisions.

DISCUSSION

There are two legal standards to be considered in this case.  The Court must consider (1) whether the Petitioner is mentally competent to waive his federal habeas review[1] and (2) whether the Defendant has knowingly, intelligently, and voluntarily waived his constitutional rights.[2]

Looking first at the waiver of constitutional rights, Magistrate Anderson correctly noted that the relevant inquiry is whether "upon the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused," there has been "an intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 465 (1938).  In addition, when discussing a waiver of legal remedies, the Court must delve into the voluntariness of the waiver especially if it results from duress.  Comer v. Stewart, 215 F.3d at 917.  When looking at duress in a capital case, the Court must consider whether the capital prisoner's "conditions of confinement constitute punishment so harsh that he has been forced to abandon a natural desire to live."  Id. at 918.

In her Report, Dr. Johnson noted that the Petitioner was very cooperative and had a clear understanding of the process that was occuring.  He had no significant psychiatric history.  He

---

[1] Lonchar v. Zant, 978 F.2d 637, 641 (11th Cir. 1993).

[2] Comer v. Stewart, 215 F.3d 910, 917-918 (9th Cir. 2000).

3

also had a good recollection of his life events.  In her discussions and observations, Dr. Johnson stated that she did not observe any evidence of obsessive thinking, compulsive behavior, suicidal ideation, delusional beliefs, or clouding of consciousness.  Dr. Hilkey made similar observations and noted that Petitioner's intellectual function was superior.  Interviews and discussions with people that knew the Petitioner reflected that he never exhibited any evidence of mental illness.

As to any physical problems, Petitioner has been diagnosed with Hepatitis C positive and suffers from chronic knee, hip and back pain.  However, Petitioner states that these problems are but a small part of the reason that he wishes to end the appeal process.  Further Petitioner denies that the suicides of his two fellow death-row inmates in July 2003 and February 2004 were catalysts for his present decision to forgo habeas review.

Regarding the decision to waive federal habeas review, Petitioner stated that he had first considered stopping his appeals in the early 1990s.  He further stated that in 1993, he informed his habeas counsel that he was tired of his present situation and that the appeals process had gone on much longer than he anticipated.  Further, Petitioner had long considered choosing a particular date to discontinue his appeals.

In response to Magistrate Anderson's question regarding Petitioner's mental competency, Dr. Johnson found, after clinical evaluation and psychological testing, that Petitioner did not suffer from mental illness, psychosis, or significant mood disorder, either presently or historically.  Dr. Johnson informed Magistrate Anderson that she found the Petitioner to clearly appreciate his current position as well as able to articulate the bases for his present decision despite being aware that others might not view his decision as rational.

As to claims that Petitioner's present decision might be based on duress in light of his

confinement, Dr. Johnson concluded that those claims were unfounded.  In her visit, Dr. Johnson found the Montana state prison facility to be above average for that type of a unit.  Petitioner is allowed 90 minutes outside of his cell a day in addition to his 60-90 minutes of yard time.  He is also allowed the maximum amount of privileges for property, visitation, and phone use.  In his cell, Petitioner has a color TV, a stereo, a hot pot and an electric razor. From her observations of the Prison and her review of the prison's policies, Dr. Johnson found no evidence of duress due to confinement.   From this, Magistrate Anderson found and this Court agrees that the conditions of Petitioner's confinement are not so harsh that he has been "forced to abandon a natural desire to live."  Comer, 215 F.3d at 918.

Objections to the Magistrate's Findings and Recommendations were submitted by Petitioner's Habeas Counsel.  The Respondent filed a response in opposition to the objections.  The sum of habeas counsel's objections are (1) that Magistrate Anderson's Findings and Recommendations violate F.R.E. 706 and the Court's own order and (2) that an evidentiary hearing is necessary before a decision to forgo appeals can be granted.

Regarding the contention that an evidentiary hearing is required, habeas counsel's reliance on Comer v. Stewart is misplaced.   The facts in Comer are distinguishable from our present case. In Comer, there were a number of issues that necessitated an evidentiary hearing:

1.   There was a question whether or not petitioner in fact consented to the filing of his habeas petition;

2.   There was a question whether the conditions of petitioner's confinement were causing him duress to the extent that they motivated him to end his appeals; and

3.   There was a question of petitioner's mental competency in light of the correspondence between Petitioner to the Attorney General's office, the Supreme Court of Arizona, as well as the sentencing state court judge.  Comer, 915 F.3d at 915-916.

As the record reflects, the aforementioned questions that were present in <u>Comer</u> are not present in our instant case.  Furthermore, a review of <u>Comer</u> reflects that the Ninth Circuit's order of an evidentiary hearing was based on allegations and evidence that are not presented here. <u>Id</u>. at 917-918.   It is noted that throughout their objections, habeas counsel fail to cite any specific statements in the Report that are incorrect nor do they make any specific factual showing that is contrary to the Report that would necessitate a need for a hearing.  As a consequence, this Court concludes that <u>Comer</u> does not mandate an evidentiary hearing and further that given the facts of this case, a hearing is not required.

As to the F.R.E. 706 argument, habeas counsel contend that Magistrate Anderson violated F.R.E. 706 and his own Order when (1) Dr. Johnson failed to provide the Report to habeas counsel; (2) Magistrate Anderson failed to provide the Report to habeas counsel; (3) Habeas Counsel did not have an opportunity to depose Dr. Johnson nor to respond to the Report; and  (4) Magistrate Anderson did not conduct an evidentiary hearing and allow habeas counsel to cross-examine Dr. Johnson.

It appears that the sum of habeas counsel's objections are that they did not have an opportunity to challenge the Report.  However, habeas counsel had an opportunity to challenge the Report when they filed their objections to Magistrate Anderson's Findings and Recommendations.  Yet, a review of habeas counsel's objections reflects that they have not presented any evidence to rebut the Report nor the findings of the Magistrate.

Regarding the Magistrate's final decision to proceed without a hearing, given Dr. Johnson's Report and habeas counsel's failure to present any factual objections to the Report, this Court concludes that no harm has occurred.

CONCLUSION

After review and consideration, this Court finds habeas counsel's Objections to Findings and Recommendations to be without merit.  Further, this Court concludes that the Petitioner is mentally capable to withdraw his petition and that his decision to cease the appeals process is not made under duress due to confinement. Petitioner has no history of mental illness.  Rather, from the evidence presented, it appears that Petitioner understands his current position and is making a rational choice with respect to his decision to cease habeas litigation.  Further this Court finds the Petitioner's decision to dismiss his counsel and forgo federal habeas review is made knowingly, intelligently and voluntarily.

As such this Court ADOPTS Magistrate Anderson's Findings and Recommendations in this case.  For the foregoing reasons, IT IS HEREBY ORDERED that,

1. Petitioner Dawson's *Pro Se* Motion for order stopping all appeals (*Doc. # 182*) is GRANTED;

2. Petitioner Dawson's *Pro Se* Motion for an order dismissing Petitioner's attorneys from any further involvement in Petitioner's case (*Doc. # 191*) is GRANTED.

The Clerk of Court shall notify the Parties of the making of this Order.

DATED this 12th day of December, 2005.

_____
JACK D. SHANSTROM
SENIOR U.S. DISTRICT JUDGE